UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DWAYNE J. SCOTT and DERELL J. MEYNARD,
individually and on behalf of all others similarly situated,

            Plaintiffs,

-against-

WHOLE FOODS MARKET GROUP, INC.,

            Defendant.

**Case No.
18-cv-000861(SJF)(AKT)**

**DECLARATION OF
STEVEN J. MOSER IN
OPPOSITION TO WHOLE
FOODS' MOTION TO DISMISS**

## <u>DECLARATION OF STEVEN J. MOSER</u>

Steven J. Moser declares the following:

1. I represent the Plaintiffs Dwayne J. Scott and Derell J. Meynard;

2. I submit this declaration in opposition to the Defendant's motion to dismiss the complaint.

3. I have annexed as Exhibits hereto true and accurate copies of the following Opinion Letters of the New York State Department of Labor:

 **Exhibit 1:**  Letter in response to Requests for Opinion Nos. RO-08-0001, RO-08-0045, RO-09-0022 and RO-09-0086 dated October 29, 2009;

 **Exhibit 2:**  Letter in response to Request for Opinion No. RO-09-0161 dated June 18, 2010;

 **Exhibit 3:**  Letter in response to Request for Opinion No. RO-09-0129 dated February 25, 2010;

 **Exhibit 4:**  Letter in response to Request for Opinion No. RO-10-0003 dated October 28, 2010;

 **Exhibit 5:**  Letter in response to Request for Opinion No. RO-10-0165 dated

November 8, 2010.

I declare that the foregoing is true and correct.

Dated: Glen Cove, New York
April 30, 2018

_____/s/_____

Steven J. Moser

EXHIBIT 1



**New York State Department of Labor**
David A. Paterson, *Governor*
M. Patricia Smith, *Commissioner*

October 29, 2009



Re:  Request for Opinion
  Paycards/Debit Cards
  RO-08-0001
  RO-08-0045
  RO-09-0022
  RO-09-0086

Dear ████████████████████:

    This letter is written in response to your letters requesting an opinion as to the permissibility of utilizing direct payment cards/paycards ("debit cards") for the payment of wages under the New York State Labor Law. Since this letter is written in response to several requests for opinion which set forth different, albeit similar, factual circumstances, this response is intended to enunciate this Department's opinion as to the permissibility of the use of debit cards for the payment of wages in general under the New York State Labor Law. There are many different arrangements employers can make to pay employees through debit cards and the

- 2 -

Department reserves the right to examine any individual employer's payroll\debit card plan to ensure that it is compliant with state law and regulations.

Section 192(1) of the Labor Law provides that "[n]o employer shall without the advance written consent of any employee directly pay or deposit the net wage or salary of such employee in a bank or other financial institution." While Section 192(1) may have been enacted into law well before the development of payroll/debit card wage payment options, the language of the section is, in the opinion of this Department, broad enough to encompass the deposit of wages into a payroll/debit account established for the payment of wages so long as the wages are deposited in a bank or other financial institution for the benefit of the employee. Accordingly, it is the opinion of this Department that the use of debit cards for the payment of wages, is permissible under the New York State Labor Law in certain circumstances. Since the permissibility of payments of wages through debit cards directly implicates Sections 191, 192, and 193 of the Labor Law, the requirements of those Sections, as they relate to debit cards, are discussed individually below. Please note, however, that activities identified as violating the provisions of the Labor Law in the below discussion are not intended to represent a comprehensive list and that adherence to such does not guarantee compliance in every possible case.

*Labor Law Section 191*

Section 191 of the Labor Law requires the timely payment in full of an employee's agreed upon wages and sets forth the frequency of such payments for particular categories of employees. For example, manual workers must be paid weekly and not later than seven days after the end of the week in which their wages are earned (Labor Law §191(1)(a)(i)), while clerical and other workers must be paid in accordance with the agreed terms of employment, but not less than semi-monthly, on regular pay days designated by the employer (Labor Law §191(1)(d).)

The provisions of Section 191 of the Labor Law do not prohibit the imposition of fees by a financial institution for banking services incidentally provided to the employee. However, fees for services that are essential for an employee to access his or her wages in full are prohibited as they deny the employee the full and timely payment of his or her wages. Examples of services which are essential to the employee's access to wages - i.e. services which may not be conditioned upon the payment of fees - include providing a method of withdrawals of wage accounts from the bank or financial institution, providing employees with a debit card and a replacement at reasonable intervals, and the maintenance of the account. Examples of non-essential services to the employee's full access to his or her wages - i.e. services which may be conditioned upon the payment of fees - include electronic money transfers, money orders, personalized checks, electronic bill-pay and fees associated with use of the debit card at other institutions such as retail outlets. Thus, a plan would violate Labor Law Section 191 if an employee is charged for any withdrawals of his or her wages from the bank of financial institution but not for additional banking services that the employee elects to use.

Furthermore, the application of Section 191 of the Labor Law to the payment of debit cards would require that such plans also adhere to the following:

– 3 –

- <u>Timeliness</u>: Any delay associated with an employee's ability to obtain his/her wages in full within the time required by Section 191 is a violation of that section. Such delays include holds for "clearance" of funds deposited. Delaying the employee's ability to make withdrawals against debit cards through scarcity of bank branches, or other methods for withdrawing funds from debit cards could also violate Section 191.

- <u>Payment in full</u>: Employees must be able to access the entirety of their wages, e.g. if the employee's wages are $143.32, the employee must be able to receive $143.32 in cash. Any restrictions or circumstances that prevent such access constitute a violation of Section 191 of the Labor Law. To avoid a violation, the employer must take positive steps to ensure that the employee is able to access such money. Steps to do so would generally include, but are in no way limited to, ensuring that bank branches where the employee could obtain the entirety of his/her wages are in close proximity to the employee and may be quickly and conveniently accessed.

- <u>No encumbrances</u>: Encumbrances that limit or delay an employee's access to wages violate Section 191. Examples of such encumbrances include minimum balances and "tolerance factors" used with point of sale transactions (e.g. those commonly imposed with pay-at-the-pump transactions, hotel rooms, and rental cars).

It is worth noting, however, that otherwise prohibited fees, e.g. for services essential for an employee to access his or her wages, levied by banks or financial institutions directly on the employer are not prohibited by Section 191, provided that such fees do not reduce, delay, hold or otherwise limit the employee's access to his/her wages. As such, an employer seeking to utilize debit cards for the payment of wages may elect to arrange with a bank or financial institution to have any fees billed directly to the employer in lieu of taking them out of the employee's account, thereby avoiding a violation of Section 191 of the Labor Law. Of course, any employer deduction from the employee's wages to pay the cost of such fees would be a violation of Labor Law Section 193 as discussed below.

*Labor Law Section 192*

As stated above, Section 192(1) of the Labor Law provides that "[n]o employer shall without the advance written consent of any employee directly pay or deposit the net wage or salary of such employee in a bank or other financial institution." Accordingly, no employee, except those exempted under Section 192(2), may be required to accept payment of wages through either direct deposit or a debit card. For consent to be valid, it must not be a condition of employment, since to do so would undermine the voluntariness and lower the requirement for consent to the functional equivalent of mere notification. Moreover, consent provided prior to the inception of the employment relationship is ineffective since Section 192(1) requires that the consent be from an "employee," further supporting the conclusion that such consent must be given after the inception of the employment relationship. Furthermore, full notice must be provided to the employee of all of the terms and conditions relating to the debit card option, including a full disclosure of fees associated with use of the card.

It is also worth noting that the non-application provision in subdivision 2 of Section 192, which exempts employees working in a bona fide executive, administrative or professional

– 4 –

capacity earning in excess of nine hundred dollars a week and employees working on a farm not connected with a factory, only operates to relieve an employer of the provisions of Section 192 and not those discussed above in Section 191 or below in Section 193.

*Labor Law Section 193*

Labor Law Section193 prohibits deductions from wages except when such deduction is either: a) specifically authorized by law or; b) is a deduction that is authorized by the employee in writing, for the benefit of the employee, and is made either for the purposes expressly enunciated in Section 193(1)(b), or for a purpose similar to one of those expressly enunciated in Section 193(1)(b). (*see Angello v. Labor Ready*, 7 NY3d 579 [2006]; *Marsh v. Prudential Securities, Inc.*, 1 NY3d 146 [2003].) None of the purposes expressly enumerated relates to the payment of fees in relation to the payment of wages via debit cards. However, so long as fees do not relate to the employee's access to wages, thereby violating Section 191, and no part of those fees are remitted or otherwise directed to the employer or its subsidiary, permissible fees (see discussion under Section 191 above) imposed by a financial institution for banking services related to a payroll/debit card account would not run afoul of Section 193 of the Labor Law. Fees which are paid directly or indirectly to the employer, on the other hand, will be deemed to be a violation of Section 193 of the Labor Law. (*See, Angello v. Labor Ready, supra*, holding that the imposition of fees for the cashing of vouchers violates Section 193; *see also*, Labor Law Section193(2), prohibiting employers from requiring impermissible deductions through separate payment.)

Additionally, please be reminded that Section 195(3) of the Labor Law requires employers to furnish each employee a wage statement, containing the information required by that statute, with every payment of wages and that such a wage statement must be furnished regardless of the method by which wages are paid.

If you have any further questions, please do not hesitate to contact me.

Very truly yours,

Maria L. Colavito, Counsel

By: 

Jeffrey G. Shapiro
Associate Attorney

cc:    M. Patricia Smith
       Carmine Ruberto
       Terri Gerstein
       Jennifer Brand
       Mario Musolino
       Colleen Gardner
       Pico Ben-Amotz

EXHIBIT 2



**New York State Department of Labor**
David A. Paterson, *Governor*
Colleen C. Gardner, *Commissioner*

**VIA FAX:** █████████

June 18, 2010

█████████

Re:  Request for Opinion
Compensatory Time
RO-09-0161

Dear █████████:

I have been asked to respond to your facsimile dated November 13, 2009, regarding the use of compensatory time at a CPA firm during tax seasons so that employees for that firm may "bank" hours for later use. The firm would like to allow employees to accumulate hours during tax season through the use of "comp time" for hourly non-exempt employees at the rate of one and one-half hours for every hour worked in excess of forty hours of "straight time" work. Your letter asks whether there is a way to implement a proper compensatory time policy that is within the wage and hour laws. Your also ask whether there are any restrictions for "exempt employees" who work "extra time" to receive compensatory time or whether the CPA firm would be required to categorize that time as a bonus.

Compensatory time in lieu of overtime or, "comp time," is the practice wherein an employee receives future time off, generally at one and one half times the amount worked, for overtime hours worked instead of receiving overtime pay for such hours. As discussed further below, the use of compensatory time in lieu of the payment of overtime may be in violation of New York State Labor Law Articles 6 (Payment of Wages) and/or 19 (Minimum Wage Act) depending on the factual circumstances. Please be advised that although the prohibitions on compensatory time in lieu of overtime in these two Articles are similar, the prohibitions are nevertheless independent of each other.

*Labor Law Article 6 (Payment of Wages).*

Article 6 of the Labor Law sets forth the requirements for the payment of wages for employees working within the State of New York. "Wages," for the purposes of that Article, are defined in Section 190(1) as follows:

> 1. "Wages" means the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis. The term

- 2 -

> "wages" also includes benefits or wage supplements as defined in
> section one hundred ninety-eight-c of this article, except for the
> purposes of sections one hundred ninety-one and one hundred
> ninety-two of this article.

Overtime pay, as you can see, undoubtedly fits within the definition of wages as it is the "earnings of an employee for labor or services rendered."

Section 191 of the Labor Law requires the timely payment in full of an employee's agreed upon wages and sets forth the frequency of such payments for particular categories of employees. For example, manual workers must be paid weekly and not later than seven days after the end of the week in which their wages are earned (Labor Law §191(1)(a)(i)), while clerical and other workers must be paid in accordance with the agreed terms of employment, but not less than semi-monthly, on regular pay days designated by the employer (Labor Law §191(1)(d)). However, Section 191 does not specify a period of time in which an employer is required to pay employees working in a bona fide executive, administrative, or professional capacity earning in excess of nine hundred dollars a week.

Applying the requirements in Section 191 to the practice of utilizing compensatory time in lieu of overtime, nothing in that Section relieves the employer of the obligation to pay an employee's wages, including any required overtime or hours worked, within the time period allotted. Accordingly, an employee may not be given compensatory time in lieu of the payment of overtime unless the employee is working in a bona fide executive, administrative, or professional capacity earning in excess of nine hundred dollars a week.

*Labor Law Article 19 (Minimum Wage Act).*

Article 19 of the Labor Law (the Minimum Wage Act) and the regulations adopted thereunder, require that employees be paid at a rate not less than one and one-half times their regular rate of pay for all overtime hours worked. (*see*, Labor Law §650 et seq.; 12 NYCRR §142-3.2.) Employees exempted from overtime coverage by Sections 7 and 13 of the Federal Fair Labor Standards Act (FLSA) are similarly required to be paid overtime, but at a rate not less than one and one-half times the minimum wage rate. (*Id.*) Nothing in Article 19, or the regulations adopted thereunder, permits the substitution of future time off in lieu of the payment of overtime; rather, 12 NYCRR §142-2.2 clearly mandates that "an employer shall pay an employee for overtime." Article 19, Section 651(5) defines an employee to include any individual employed or permitted to work by an employer in any occupation, but also sets forth fifteen exclusions from that definition. The only exclusion set forth within that definition that might be applicable to a CPA firm is the exclusion for an individual who is employed or permitted to work in a bona fide executive, administrative, or professional capacity.

Accordingly, while compensatory time in lieu of overtime is not prohibited by the New York State Labor Law, its use is limited, by Articles 6 and 19, to the situations in which an individual is neither an "employee" as defined by Article 19 of the Labor Law nor is within the coverage of Section 191 of the Labor Law.

- 3 -

Your second question is unclear to me. As you can see from the discussion above, workers outside of the coverage of Articles 6 and 19 can participate in a compensatory time program. After a reading of the above discussion on the permissibility of compensatory time, should you still have questions in relation to this issue, please provide factual examples so that we will be able to provide you a complete response.

This opinion is based on the information provided in your facsimile dated November 13, 2009. A different opinion might result if the circumstances stated therein change, if the facts provided were not accurate, or if any other relevant fact was not provided. If you have any further questions, please do not hesitate to contact me.

Very truly yours,

Maria L. Colavito, Counsel

By:

Jeffrey G. Shapiro
Associate Attorney

JGS:mp
cc:    Carmine Ruberto

EXHIBIT 3



**New York State Department of Labor**
David A. Paterson, *Governor*
Colleen Gardner, *Commissioner*

February 25, 2010



Re:  Request for Opinion
Rounding of Time
RO-09-0129

Dear ▮▮▮▮▮▮:

  This letter is written in response to your letter of September 15, 2009 in which you request an opinion as to whether an employer's rounding practice described therein is permissible under the New York State Labor Law. Please accept my apology for the delay in responding to your letter. Your letter states that an employer which operates a hotel containing a full-service restaurant uses an electronic punch clock to record the employees' hours worked. The bookkeeping software used by the employer automatically rounds the "punch time" to the nearest seven minute interval. In the example used in your letter, an employee who punches in at 7:54 or 8:06 is credited with punching in at 8:00. As your letter poses six questions arising under these circumstances, the questions posed in your letter are quoted and addressed individually below in the order posed by you.

  *1. Is the above-described rounding practice lawful under [the] New York Labor Law?*

  Federal regulation 29 CFR §785.48(b) provides as follows:

> (b) "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used

- 2 -

> in such a manner that it will not result, over a period of time, in
> failure to compensate the employees properly for all the time they
> have actually worked.

It has been this Department's longstanding policy to follow the principles set forth in 29 CFR §785.48(b) in its enforcement of Articles Six (Payment of Wages) and Nineteen (Minimum Wage) of the Labor Law.  Applying those principles to the situation described in your letter, it appears that the rounding practice you describe does not, on its face, violate the requirements of the New York State Labor Law.

2.  *Does the Department of Labor have a guideline to determine what is appropriate rounding of punch records under [the] New York Labor Law?  As noted above, the employer utilizes an electronic time clocks [sic] and software later rounds [sic] the punch using seven-minute increments, which we understand is relatively common in the hospitality industry.*

The Department, as noted above, follows the principles set forth in 29 CFR §785.48(b) with regard to rounding.  That regulation recognizes that rounding is commonly accepted in industry at intervals ranging from five to fifteen minutes.  Accordingly, since the rounding interval described in your letter falls within the permissible intervals in 29 CFR §785.48(b), it is the opinion of this Department that such interval is permissible under the New York State Labor Law.

3.  *If a non-exempt employee is scheduled to work 37.5 hours per week, but the punch reflect 38.75 hours for the week, does the rounding of 1.25 hours of punch time back to 37.5 hours violate [the] New York Labor Law?*

As stated above, rounding practices are permissible provided that they are used in such a manner that it will not result in a failure to compensate employees properly for all the time they have actually worked over a period of time.  Your question does not provide enough information to evaluate whether the rounding of 38.75 punch hours to 37.5 hours violates the provisions described above since the other surrounding workweek's rounding practices were not provided.  However, so long as the employee is compensated properly for all hours worked over a period of time, e.g. through rounding 36.25 punch hours to 37.5 hours worked in the previous week, such practice, as described, is permissible under the New York State Labor Law.

4.  *Assume that an employee is regularly scheduled to work 37.5 hours per week.  If he or she begins work early or works after the regular finishing time, is additional straight time compensation due under [the] New York Labor Law?  Under the FLSA, no such payment would be required assuming the employee was paid more than the minimum wage and did not exceed 40 hours of work in a workweek.  See, Wage and Hour Opinion Letter, FLSA 2008-7NA, (May 15, 2008).  Does New York follow the federal law on this issue, or does [the] New York Labor Law specifically require the employee to be paid for all hours worked at the stated, regular, hourly rate of pay?*

In responding to this question, it is important to note that the underpayment which you describe does not appear to be the result of a rounding practice. Therefore, federal regulation 29 CFR §785.48(b) is inapplicable to justify the non-payment of wages for all hours worked during the workweek based on prior or subsequent rounding of time. Section 191 of the Labor Law requires employees be paid for all hours worked no later than the time period specified by that Section. Please be advised that the FLSA does not prevent the states from enacting wage and overtime laws and regulations that are more beneficial to workers than the FLSA (*see* 29 U.S.C. §218; *Manliguez v. Joseph*, 226 F. Supp.2d 377 (EDNY 2002)). Therefore, the requirement in Section 191 of the Labor Law that employees be paid for all hours worked is enforceable upon employers in New York State notwithstanding any provision in or interpretation of the FLSA that provides otherwise.

> 5. *Would the Department of Labor change its response to Question 4 if the employee was advised in writing to punch in and out within 7 minutes of their start time, not to work any unrecorded or "off the clock" work hours at any time and not to work overtime unless such time was pre-approved, all under threat of disciplinary action?*

Employees must be paid for all hours suffered or permitted to work regardless of whether such time was approved or in disregard of the employer's policies. Therefore, the response to question 4 would remain unchanged.

> 6. *If an employee receives premium pay that is not otherwise due (e.g., time and one half for working over 8 hours in a day) can the employer use that as a credit against any additional straight time pay or overtime pay that may be due in that workweek?*

Assuming you are referring to the State minimum wage requirement with your use of the phrase "straight time pay," please be advised that the New York State Labor Law requires that employees be paid for all hours worked per workweek at a rate not less than the minimum wage specified therein. (12 NYCRR §142-2.1 *et seq*.) Nothing in the New York State Labor Law prohibits an employer from taking credit for "premium pay" not otherwise required to be paid to the employee in satisfaction of its weekly minimum wage obligation, so long as taking such a credit does not contravene any other provision contained therein and such credit is provided as part of the employee's rate of pay. For example, an employer that pays its employees at the minimum wage rate of $7.25 per hour plus an additional five dollars per hour for all night shift hours may use the additional night shift payment to satisfy any other minimum wage obligations owed to that employee for that work week, including spread of hours and call-in pay. Therefore, an employer can use "premium pay" as a credit against its State minimum wage obligations.

With regard to the overtime pay requirements of the New York State Labor Law, please be advised that employees are generally required to be paid for all overtime hours at a rate not less than one and one-half times their regular rate of pay. (12 NYCRR §142-2.2.) When an employee's regular rate of pay is on a non-hourly basis, as would be the case where credits are taken for previous increased rates of pay, the employee's regular rate is determined by dividing the total hours worked during the week into the employee's total earnings, which necessarily takes any additional "premium pay" into account. (*see*, 12 NYCRR §142-2.16.) Under the example in the preceding paragraph, an employer may not use the night shift premium pay as a

- 4 -

credit for satisfaction of any overtime paid to an employee. Any amounts paid to the employee, including the night shift premium, must be included in the employee's regular rate of pay by which that employee's overtime rate is calculated. Therefore, an employer cannot use such "premium pay" as a credit against additional overtime pay due to an employee in any workweek, since that pay must be included in determining the employee's regular rate of pay.

This opinion is based on the information provided in your letter of September 15, 2009. A different opinion might result if the circumstances outlined in your letter changed, if the facts provided were not accurate, or if any other relevant fact was not provided.

Very truly yours,

Maria L. Colavito, Counsel

By:   Jeffrey G. Shapiro
        Associate Attorney

JGS:mp
cc:     Carmine Ruberto



EXHIBIT 4



**New York State Department of Labor**
**David A. Paterson,** *Governor*
**Colleen Gardner,** *Commissioner*

October 28, 2010



<div style="margin-left: 45%;">

Re:     Request for Opinion
        Direct Deposit
        Meal Breaks
        Child Labor
        RO-10-0003

</div>

Dear ▮▮▮▮,

     I have been asked to respond to your letters dated December 1, 2009, and December 31, 2009, in which you request an opinion regarding three areas of ▮▮▮▮ ▮▮▮▮ intended employment policies.  Your letter poses questions relating to the direct deposit of wages, meal periods, and child labor.  The specific questions posed under each of these areas are quoted [italics] and addressed individually below.

**Direct Deposit**

   *1. As a multistate employer, can ▮▮▮▮ "mandate" direct deposit for all employees in your state?*

     Section 192(1) of the Labor Law provides that "[n]o employer shall without the advance written consent of any employee directly pay or deposit the net wage or salary of such employee in a bank or other financial institution."  Accordingly, no employee, except those exempted under Section 192(2), which exempts, in relevant part to this inquiry, persons employed in a bona fide professional, administrative, or executive capacity making in excess of nine hundred dollars per week, may be required to accept payment through direct pay or deposit into a bank or other financial institution.  For consent to be valid, it must not be a condition of employment, since to do so would undermine the voluntariness and lower the requirement for consent to the functional equivalent of mere notification.  Consent must be sought and provided after the inception of the employment relationship.  Consent provided

prior to the inception of the employment relationship is ineffective since Section 192(1) requires that the consent be from an "employee," thereby mandating that it be given after the inception of the employment relationship.  Such consent may be revoked by employees at any time.

2.  *For purposes of mandatory direct deposit is there a distinction between existing employees and new hires?  For instance is it permissible to require new hires to accept direct deposit and not current employees that have not elected to have it?*

As indicated in our previous response, use of direct deposit is allowed under law only upon voluntary consent of the employee.  Therefore, mandatory use of direct deposit is not permitted for any employee, whether a new hire or not.

3.  *If we cannot classify it as a condition for employment for existing employees, can we classify it as a condition of employment for new hires, so that all new employees have to sign up?*

See the response to questions 1 and 2, above.

4.  *If it can be a condition of employment, what happens if an employee signs up for Direct Deposit to get the job and then cancels it/closes account.  Can their employment be terminated?*

Not only may direct deposit of pay not be mandated as a condition of employment, employers are prohibited by Section 215 of the Labor Law from taking retaliatory action against employees for asserting their rights under the Labor Law.

**Meal Breaks**

1.  *Can employees by agreement in a signed waiver or contract waive their meal period rights provided by law and designate how each would like to handle their meal breaks?  We have enclosed a sample waiver that presents two options; working through their lunch breaks, or punching out for a full thirty minute meal break.*

Section 162 of the Labor Law covers employee meal periods.  Labor Law Section 162(1) requires a person employed in or in connection with a factory to have at least a sixty-minute noon day meal.  Section 162(2) requires other persons employed in an establishment or occupation under the provisions of the Labor Law to have at least a thirty-minute noon day meal.  The Department of Labor interprets the term "noon day meal" as one that is taken during the period extending from 11:00 a.m. to 2:00 p.m., meaning that the hours of employment must extend through the noon day meal period.  An employee must be provided a meal period in all situations where he or she works in excess of six hours, and those hours encompass the period between 11:00 a.m. and 2:00 p.m.  Section 162(3) requires that every person employed for a period starting before 11:00 a.m. and continuing later than 7:00 p.m.

- 2 -

must be allowed an additional meal period of at least twenty minutes between 5:00 p.m. and 7:00 p.m.  Section 162(4) extends non-factory workers' meal period to forty-five minutes, and factory workers to sixty-minutes, when the person works between the hours of 1:00 p.m. and 6:00 a.m.

In American Broadcasting Companies, Inc. v. Roberts, 61 N.Y.2d 244 (1984), the New York State Court of Appeals, New York's highest court, held that certain provisions of the Labor Law could be waived by employees or their authorized representatives provided that the waiver or modification of the statutory intent does not contravene the legislative purpose of the statute.  The case involved individuals employed in producing and reporting network news who had to miss scheduled meal breaks due to the timing of the evening news broadcast.  In exchange for a waiver of their evening meal breaks provided in Section 162 of the Labor Law, the employer negotiated, through the collective bargaining agreement, to give the workers extra breaks and an additional extended meal period during other times of the day.  The Court held that where there was no express legislative indication that waiver was precluded, "a bona fide agreement by which the employee received a desired benefit in return for the waiver, the complete absence of duress, coercion or bad faith and the open and knowing nature of the waiver's execution" may effectively waive or modify the benefit provided by the statute to the employees.

As you have not set forth any grounds for a belief that such criteria have been met, it is the position of the Department of Labor that a waiver of the meal period under the circumstances you describe would not be lawful, and that ▮▮▮ is required to comply, in full, with the requirements of Section 162 as contained therein and described above.  Additionally, your proposal to utilize a form[1] to accomplish such a waiver does not appear to meet these requirements since it likely will not be the result of good faith negotiations for which employees receive significant benefits.  A waiver form provided by an employer does not, in the opinion of this Department, meet the requirements for a valid waiver of Section 162.

2. *Can we require employees sign off on their weekly timesheets?, so that they are agreeing with their pay for that week and can request corrections prior to payroll being processed and distributed.  This can be done electronically or on a printout of their timesheet.*

Section 191 of the Labor Law requires the timely payment in full of an employee's agreed upon wages and sets forth the frequency of such payments for particular categories of employees.  For example, manual workers must be paid weekly and not later than seven days after the end of the week in which their wages are earned (Labor Law §191(1)(a)(i)), while clerical and other workers must be paid in accordance with the agreed terms of employment, but not less than semi-monthly, on regular pay days designated by the employer (Labor Law §191(1)(d).)  While an employer can require an employee to sign off on their weekly timesheet,

[1] It is worth noting that the sample waiver forms are incorrect in their description of New York's meal period requirements.

- 3 -

the employee's signature on a weekly timesheet neither relieves the employer of its obligations under this Section, or any other under the Labor Law, nor does it prevent an employee from filing a complaint with this Department or bringing an action for a violation of that or any other section of the Labor Law.  However, in direct response to your question, please be advised that nothing in the Labor Law restricts an employer's ability to obtain an employee's acknowledgement of a correction in a time sheet prior to  payroll being processed and distributed, and such acknowledgement may be done electronically or on a printout of their timesheet.

**Child Labor**

1.  [In regard to the description of your policies regarding underage workers] *Are there any exceptions/clarifications to the above?  In other words, are the above listed practices lawful in your jurisdiction?*

Your letter contains a general discussion of your policies regarding the employment of children under the age of 18.  Insofar as your letter does not provide a detailed description of NBE's policies on the employment of minors, no determination can be made as to the permissibility of such policies under the New York State Labor Law.  However, based upon the limited information contained in your letter regarding the employment of minors, namely that working papers are maintained, that child labor laws differ from state to state, and that the director of human resources is required to approve all workers prior to hiring (a strictly internal administrative requirement particular to your company), nothing described in your letter appears to be in violation of the New York State Labor Law.

2.  *Can 14-15 year olds work in a bowling center in the two capacities mentioned (Birthday and After School Attendants)?*

The answer to this question will depend upon whether the hours the children are working exceed the maximum allowed under law and whether the children are engaged in occupations permitted under law.

With regard to permitted occupations, please be advised that the New York Labor Law prohibits minors from working in some jobs for safety and health reasons.  Examples of prohibited occupations include construction work, the operation of power-driven tools, the manufacture of brick and tile, logging, mining, and the manufacture of explosives.  The positions described in your letter do not appear to fit in any of the prohibited occupations and are, therefore, permissible for children to work in.

With regard to the maximum number of hours a child may be permitted to work, the child's age and whether school is in session are the key factors.  When school is in session, students aged 14 and 15 may work three hours on school days, and eight hours on other days, up to eighteen hours per week, and six days a week.  Such work must be performed between 7:00 a.m. and 7:00 p.m.  When school is not in session, students aged fourteen and fifteen may

work up to eight hours a day, up to forty hours a week, and six days a week.  From June 21 to Labor Day, students aged fourteen and fifteen may work between 7:00 a.m. and 9:00 p.m.  Your letter states that birthday party attendants are scheduled on weekends from 11:00 a.m. to 5:00 p.m., and occasionally after school on weekdays from 3:00 p.m. to 6:00 p.m.  The afterschool attendants are scheduled from about 3:00 p.m. to 6:00 p.m.  Assuming the child workers do not exceed the maximum hours or days restrictions described above, it appears that the practice described in your letter is permissible under the New York Labor Law.

3. *Are the laws for underage family members of the owners the same?*

While some exceptions to the child labor laws cover children working for their parents or guardians on a farm or other outdoor work not associated with or for any trade, business, or service, these exceptions are inapplicable to the operation of a bowling alley.  Accordingly, the laws for underage family members of the owners are the same as those described above.

This opinion is based exclusively on the facts and circumstances described in your letter December 1, 2009, and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented.  Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein.  This opinion cannot be used in connection with any pending private litigation concerning the issue addressed herein.  If you have any further questions, please do not hesitate to contact me.

Very truly yours,
Maria L. Colavito, Counsel

By:   *Michael Paglialonga*
Michael Paglialonga
Assistant Attorney I

CC:   Carmine Ruberto

- 5 -

EXHIBIT 5



**New York State Department of Labor**
David A. Paterson, *Governor*
Colleen Gardner, *Commissioner*

November 8, 2010



Re:   Request for Opinion
      Deceased Employees
      RO-10-0165

Dear ██████:

    I have been asked to respond to your email to Maria Colavito on October 28, 2010, regarding a private employer's obligation to contact the next of kin or the estate representative of a deceased employee where the employer, in this case a vendor of the County, owes wages to that employee.

    Section 191 of the Labor Law requires the timely payment in full of an employee's agreed upon wages and sets forth the frequency of such payments for particular categories of employees.  For example, manual workers must be paid weekly and not later than seven days after the end of the week in which their wages are earned (Labor Law §191(1)(a)(i)), while clerical and other workers must be paid in accordance with the agreed terms of employment, but not less than semi-monthly, on regular pay days designated by the employer (Labor Law §191(1)(d).)  While nothing in the New York Labor Law specifically requires that employers contact the estate representative or next of kin of a deceased employee, Section 191 of the Labor Law is interpreted by this Department to require that employers make reasonable efforts to make such payment within the time periods specified in that Section.  Reasonable efforts should include at least all of the following: contacting any emergency contact or next of kin identified in the employee's personnel file; attempting to contact any known family or friends of the employee, if other than the emergency contact; contacting the Surrogate's Court to determine whether estate or probate proceedings have been commenced and an estate administrator identified; reviewing obituary notices to locate the widow, widower or other family member of the deceased employee; speaking with the funeral director handling the

deceased's funeral arrangements to either obtain contact information on the deceased's family or to send a message to the family to be in contact with the employer; contacting insurers on company sponsored life insurance to identify beneficiaries who can be contacted for estate information; contacting the County Health Department or other entity that issues Death Certificate to find out the identity of the next of kin listed on the Certificate. It is the Department's opinion that an employer should exhaust these methods of identifying a responsible party before the employer can be excused from its obligation to pay wages owed to the deceased employee in a timely fashion. None of these requirements is unduly burdensome on the employer; balanced against the reasonable efforts that these inquiries involve is the equitable notion that the employer should not be able to financially benefit from the death of an employee when the wages in question were earned by the employee and should be paid to his/her heirs, successors, or assigns. In addition to these efforts, the employer may certainly undertake any additional efforts designed to identify an appropriate contact. If, after these efforts, the employer is unable to locate or contact the estate representative or next of kin of the employee, the employer must retain the wages in an escrow or similar account for a period of three years and thereafter remit the funds to the Office of the State Comptroller. (*See,* Abandoned Property Law §1315(1-a).)

Applying these requirements to the present case, it appears the present employer has not taken reasonable efforts to contact the estate representative or next of kin of the employee as set forth above and may, as a consequence, be in violation of Section 191 of the Labor Law. Accordingly, please do not hesitate to provide us with the employer's name, address, and all relevant documentation so that we may begin an investigation into the matter.

This opinion is based exclusively on the facts and circumstances described in your email and subsequent communication, and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein. This opinion cannot be used in connection with any pending private litigation concerning the issue addressed herein. If you have any further questions, please do not hesitate to contact me.

Very truly yours,
Maria L. Colavito, Counsel

By:

Michael Paglialonga
Assistant Attorney I

CC: Carmine Ruberto

- 2 -